# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW–YORK.

### In May Term, 1840--in the sixty-fourth year of the Independence of the United States.

[Continued from Vol. XXIII.]

———————————

## DIAS *vs.* BRUNELL'S executor.

An action *at law* will not lie by a *cestui que trust*, against the executor of a *trustee*, created by an assignment for the benefit of creditors, upon an *implied promise* arising from the acceptance of the trust, and the conversion of the fund into money ; the party must resort to equity.

*It seems*, had there been an *express promise* by the testator, and there had been *assets*, that an action would have lain against the executor.

Property held *in trust*, on the death of the trustee, at common law passed to his executor ; but not as *assets*. He took not *as executor* but as a *trustee*, subject to the same stipulations and conditions under which it was held by the testator. *Now*, by the revised statutes, *it seems* the trust vests in the court, of chancery with all the powers and duties of the original trustee, and mustbe executed by some person appointed for that purpose under the direction of the court. 1 *R. S.* 2d. ed. *p.* 724, § 68.

DEMURRER to declaration. The plaintiff declared in *assumpsit*, setting forth that on the 14th day of May, 1833, two individuals, named *Castro* and *Henriquez*, executed to the *testator*, his *heirs, executors, administrators, and assigns*, a conveyance of divers goods, &c. of the value of $100,000, *in trust* to convert the same into money and apply the proceeds : 1. To *the payment of the expenses of the trust ; 2. To repay himself cer-  [ *10 ] tain advances, and 3. To pay *certain bonds to the United States*, ex-

ecuted, some by *Castro* jointly with Brunell and others by *Castro* jointly with Brunell and some other person; or if the bonds should be paid by Brunell or by any other person, then to *repay* to Brunell or such other person, the amount of the bonds. The plainriff then averred that Brunell accepted the trust and 'promised to perform the same ; that he took into possession the assigned property and converted it into money to the amount of $100,000, which was sufficient to satisfy all the trusts ; that two of the bonds referred to in the conveyance in trust were executed by *Castro* jointly with Brunell and the plaintiff, upon one of which bonds was due the sum of $2968, and on the other the sum of $2969; that after the death of Brunell, to wit, on, &c at, &c. the plaintiff paid to the United States $1000, on account of two judgments recovered against him upon the bonds before specified. *By means whereof, and of the acceptance of the trust and of the receipt of the property and moneys* by Brunell, in his life time, the defendant *as executor* became liable to pay to the plaintiff the money so paid by him; and *being so liable*, promised to pay, &c. Nevertheless, &c. There was a *second count* substantially like the first, except that it alleged in addition *that the defendant, as executor*, had also received divers other large sums of money, amounting to $50,000, the proceeds of the assigned property. The defendant put in separate demurrers to the two counts.

*L. H. Sandford*, for the defendant, insisted : 1. That there was no privity of contract between the testator in his life time and the plaintiff in respect to the assignment; the plaintiff had no *legal interest* in the contract, and could not have maintained an action *at law* against the testator. 1 *R. S.* 723, § 60, 2nd ed. *Hammond on Parties*, 4, 6, 7. 7 *T. R.* 664. *Co. Litt.* 272, *b.* § 464. *Cruise, tit.* 11, *ch.* 2, § 2. *Comyn's Dig. tit. Accompt D.* 3 *Bos. & Pull.* 162. 2. The conveyance being in trust, an action at law would not lie against the trustee, 18 *Wendell*, 236. *Lewellin on Trusts*, 20, 103, 573. *Law Library*, vol. 24. 4 *Kent's Comm.* [ *11 ] *288.

    3. The trust being express, was not assignable, and did not pass to the defendant, as executor, under the last will and testament of the trustee. 1 *R. S.* 724, § 68, 65. 1 *Cruise's Dig.* 488, *tit.* 12 *ch.* 1, § 69; *ch.* 4, § 53 *to* 58. 1 *Vesey*, 468. *Ambl.* 552. 4. The assigned property and effects were not assets in the hands of the executor. *Story's Equity*, 241. 5. The promises of the *defendant* are not laid as, *express promises*, but as promises *arising by implication of law* from the facts stated.

*J. Greenwood*, for the plaintiff, insisted that under the circumstances detailed in the declaration, the *trustee* was liable *at law*, and that such liability passed to his *executor*. The trust fund passed by the express terms of the

conveyance to the *trustee*, his *executors*, &c. The second count alleges that the defendant, *as executor*, received $50,000, the proceeds of the property, and that he promised to pay. The property received was a good consideration for the promise, and on proof at the trial of an *express promise*, the plaintiff will be entitled to recover. His character as *executor*, as described in the declaration, may be rejected as surplusage. The counsel cited in support of these several propositions, *Weston* v. *Barker*, 12 *Johns. R.* 276 ; 3 *id.* 72 ; 1 *Johns. Cas.* 205 ; 1 *Caines*, 363 ; 10 *Mod* 254 ; *Cowper*, 289 ; *Toller's Law of Exr's.* 429, 460.

*By the Court*, NELSON, Ch. J. This action was probably brought upon the strength of the case of *Weston* v. *Barker*, 12 *Johns. R.* 276, but it is distinguishable from it in two very important particulars.

1. The judgment there was manifestly placed upon the ground, that the facts disclosed amounted to an *express promise* on the part of the trustee to pay the plaintiff's demand. He had agreed in terms to hold the balance in his hands *subject to the order of the assignors*, and which was made in favour of the plaintiff, and notice communicated before the money was received. After this, the court regarded the money, when received, as the money of the plaintiff, and held for his use.

No case can be found, I think, where an action at law has been *sustained against a trustee for the benefit of creditors, upon an          [ *12 ] implied promise arising merely out of the acceptance of the trust to pay the demands of the particular creditors. Their interests are equitable, and belong to another forum.

There are cases of a simple trust, where courts have frequently seized upon slight circumstances, for the purpose of creating a privity of contract between the trustee and a third person, and thereby save the expense and delay of a resort to a court of equity. Several of these are referred to by Chief Justice Thompson in *Weston* v. *Barker*. In *Winch* v. *Keely*, 1 *T. R.* 619, Ashurst, J. said, that courts of law did not formerly take notice of a trust, for trusts are within the original jurisdiction of a court of equity ; but of late years, he observes, "it has been found productive of great expense to send the parties, there, and wherever this court has seen the justice of the case clearly with the plaintiff, it has not turned him round on this objection."

In *Williams* v. *Everitt*, 14 *East*, 582, one K. sent bills to the defendant, his banker, with directions to pay part of the proceeds of them to the plaintiff, and though he received the bills and the money upon them, it was held an action could not be maintained for money had and received, because as between the plaintiff and him there was no privity, either express or implied. This case comes nearly up in principle to the one before us, though the trust was a very simple one.

II. But the case under consideration differs also from *West on* v. *Barker*, inasmuch as it presents a complication of trusts wholly beyond the jurisdiction of a court of law to execute. Even if we could get over the objection that the plaintiff, in whose favour the trust is created, among others, is not a party to the deed, and that therefore there is a want of privity, it would still be impossible to sustain the action without involving in the course of the proceedings a settlement of the whole trust estate ; and if the fund should fall short, of making an equitable apportionment as the case might be. It is true, the declaration avers a sufficiency of funds, and which must be taken as admitted here ; but we cannot fail to see, if the demurrer should [ *13 ] be overruled, and *the cause go to issue, the consequences I have stated must necessarily follow.

It cannot be necessary for courts of law, at this day, to repudiate any such jurisdiction ; they never possessed it, and are sufficiently burthened with their own legitimate duties, if no other considerations influenced them, not to desire a most inconvenient enlargement by usurping the peculiar province of another forum. 5 *vesey*, 581. *Willis on Trusts*, 7, 8, *and note k. and* 16. *Lewellin on Trust*, 20. 2 *Hall's R.* 130.

If an *express promise* had been made by the trustee in the *cestui que trust*, then no examination into the condition and state of the trust would have been necessary ; the trustee would have assumed the responsibility of assets, and made himself personably liable.

III. The defendant took the trust estate under the will of Brunell, not *as executor*, but as a *trustee*, subject to the same stipulations and conditions under which it was held by the testator. The fund is not assets. *Willis on Trusts*, 53, *n.* 111. *Math. on Ex.* 100, 119, 245. 10 *Johns. R.* 63. 1 *Johns. Ch. R.* 119. The defendant therefore stands in the position of Brunell, (the testator,) provided he had been alive and the suit brought against him. The fund is not assets, to be applied to the benefit of the general creditors of his estate, but to those for whose use it has been assigned. 1 *Johns. Ch. R.* 119.

I admit, if it had appeared that the testator had made himself personally liable at law to the plaintiff by means of an *express promise*, the executor might be charged, provided sufficient assets came to his hands ; the plaintiff would then stand on the footing of a general creditor of the estate. An *implied promise* arising out of the acceptance of the trust, and undertaking to perform it, we have already seen, is not sufficient to charge the trustee individually at law, and of course devolves no obligation upon his personal representative.

In any point of view I have been able to take of the case, I am unable to perceive the ground upon which the action can be sustained.

Judgment for defendant.